**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

**Janine Beckwith,**

Plaintiff,

v. Civil Action No. ABA 25CV2622

**Acme Paper & Supply Co., Inc.**
8229 Sandy Court
Savage, MD 20763
Defendant.

AUG 07 2025

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

**COMPLAINT**

Plaintiff, Janine Beckwith, respectfully alleges:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 42 U.S.C. § 2000e et seq. and 28 U.S.C. § 1331.

2. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this claim occurred in Maryland.

## II.    PARTIES

1. Plaintiff is a Black female and resident of Montgomery County, Maryland, and was employed by Defendant as an Accounts Payable Clerk in Howard County, Maryland.

2. Defendant, Acme Paper & Supply Co., Inc. ("Acme"), is a privately held Maryland corporation with its principal place of business at 8229 Sandy Court, Savage, Maryland 20763. Acme operates primarily in Howard County and maintains a regional distribution center in Richmond, Virginia. Acme conducts substantial business within this judicial district, and the events giving rise to this action occurred in Maryland.

3. Acme Paper & Supply Co., Inc. reports approximately 254 employees as of August 2025 and conducts business throughout the Mid-Atlantic region, including Maryland, Virginia, Washington, D.C., Pennsylvania, Delaware, and New Jersey.

4. At all relevant times, Defendant employed more than fifteen (15) individuals and was subject to Title VII of the Civil Rights Act of 1964.

## III.    APPLICABLE LAWS

Plaintiff's claims arise under the following laws:

- **Title VII of the Civil Rights Act of 1964** (42 U.S.C. § 2000e et seq.)

  Plaintiff, a Black female, was subjected to repeated physical harassment by her supervisor (¶7), denied access to HR (¶10), and ultimately terminated (¶11) after reporting misconduct (¶9). These facts support claims of race and gender discrimination, hostile work environment, and retaliation.

- **Civil Rights Act of 1991**

  Plaintiff alleges she suffered emotional distress and reputational harm due to discriminatory and retaliatory termination (¶14), making these remedies appropriate.

- **Equal Pay Act of 1963** (29 U.S.C. § 206(d))

  Plaintiff's treatment as a Black female employee—including being targeted for harassment and denied HR access—may support an inference of unequal treatment in compensation or advancement opportunities compared to similarly situated employees.

- **Fair Labor Standards Act** (29 U.S.C. § 201 et seq.)

  Plaintiff was instructed to destroy financial documents (¶8), including invoices and payment records, which may relate to wage and hour violations or attempts to conceal noncompliance with FLSA requirements. Her refusal to do so and subsequent termination (¶11) raise concerns about retaliation for resisting unlawful conduct.

- **Whistleblower Protection provisions** enforced by the U.S. Department of Labor

  Plaintiff reported suspected financial misconduct to the CEO (¶9), including destruction of records. Her termination shortly thereafter (¶11) suggests retaliation in violation of whistleblower protections.

- **Maryland common law**, specifically the tort of **wrongful termination in violation of public policy**

  Maryland law protects employees who refuse to engage in illegal acts or report such conduct. Plaintiff refused to destroy financial records (¶8), reported misconduct in good faith (¶9), and was terminated without prior discipline (¶11–12). These facts support a claim for wrongful termination under Maryland public policy.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has exhausted all administrative remedies required under Title VII. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and/or the Howard County Office of Human Rights & Equity. Plaintiff received a Notice of Right to Sue and files this action within the statutory time period.

## V.    FACTUAL ALLEGATIONS

1. Plaintiff worked as an **Accounts Payable Clerk**, responsible for entering vendor invoices, checking for discrepancies, authorizing credit card payments, and preparing ACH transactions and check runs for approval.
2. Plaintiff reported directly to **Rebecca Good**, the AP Manager, who oversaw the department and had final authority over ACH deposits and payroll transactions.
3. Rebecca Good frequently withheld tasks from Plaintiff, often completing them herself and offering vague excuses—such as claiming she performed them while Plaintiff was briefly away.
4. No formal job description was provided until shortly before Plaintiff's termination, which appeared designed to retroactively justify dismissal.
5. Plaintiff was instructed by Rebecca Good to destroy financial documents and withhold payments on valid invoices, which appeared to create the illusion of excess cash flow.
6. After Plaintiff's termination, she learned that **company funds had been stolen** through bonuses issued to **Darren Cook** and **Rashaun Barksdale**, both employees in the **Human Resources department** and close personal friends of Rebecca Good.
7. Although the bonuses were not formally classified as repayable, **Rashaun Barksdale was eventually terminated**, but allowed to repay the stolen funds, and the company chose not to pursue criminal charges against him.
8. **Darren Cook had already left the company** by the time the theft was discovered.
9. Despite her role in overseeing the AP department during the time of the fraud, **Rebecca Good was allowed to remain in her managerial position**, raising serious concerns about unequal accountability.
10. Plaintiff does not know whether the manipulation of cash flow was directly connected to these bonuses, but believes the financial practices she was instructed to follow may have facilitated or concealed improper activity.
11. Plaintiff objected to these practices and refused to participate in the destruction of records or the withholding of legitimate payments.
12. Following her objections, Plaintiff was excluded from meetings, subjected to heightened scrutiny, and ultimately terminated.
13. The termination was carried out by Rebecca Good, Darren Cook, and Rashaun Barksdale—the same individuals allegedly involved in the misconduct.
14. Plaintiff was told she was terminated for "chronic lateness," despite consistently providing prior notice and never receiving formal reprimands or warnings.
15. The stated reason for termination was **pretextual**, as similarly situated employees who engaged in far more serious misconduct were not disciplined.
16. Plaintiff's coworker, **Laurie Doyle**, who is white, **took Plaintiff's personal belongings from her desk without permission**. The company failed to investigate or discipline her,

instead **recharacterizing the theft as "borrowing,"** despite Plaintiff never consenting to such use.

17. These incidents reflect a pattern of **racially biased decision-making**, where white employees were shielded from consequences while Plaintiff, a woman of color, was terminated for minor infractions.

18. Plaintiff believes her termination was not based on performance or attendance, but was a direct result of her refusal to engage in financial misconduct and her race and gender.

19. In a separate incident, **Rebecca Good admitted to physically hitting Plaintiff**, despite being **repeatedly told not to touch her**. This admission was made in Acme's written response to the **Howard County Office of Human Rights & Equity**.

20. The company took **no disciplinary action** against Rebecca Good, and the incident was **minimized in internal and external documentation**, further demonstrating Acme's pattern of protecting white employees and ignoring misconduct directed at Plaintiff.

21. These incidents reflect a pattern of **racially biased decision-making, failure to protect Plaintiff from physical and emotional harm**, and a **hostile work environment**, while enforcing harsh penalties against her for minor infractions.

## VI.  CLAIM FOR RELIEF

### Count I – Race and Gender Discrimination (Title VII)

Defendant discriminated against Plaintiff based on her race and gender in violation of Title VII.

### Count II – Hostile Work Environment

Defendant subjected Plaintiff to a hostile work environment through repeated physical harassment and intimidation that was severe or pervasive enough to alter the conditions of employment.

### Count III – Retaliation (Title VII)

Defendant retaliated against Plaintiff for reporting harassment and misconduct, culminating in her termination.

### Count IV – Wrongful Termination in Violation of Public Policy (Maryland Common Law)

Plaintiff was terminated for refusing to participate in conduct she reasonably believed to be illegal, including the destruction of financial documents and payroll fraud.

Plaintiff reported this conduct to the CEO in good faith.

Plaintiff's termination violates Maryland public policy protecting employees who report or refuse to engage in unlawful activity.

Maryland recognizes the tort of wrongful discharge in violation of public policy, as established in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), where the Court held that termination is actionable when it contravenes a clear mandate of public policy.

### Count V – Violation of the Maryland Fair Employment Practices Act (Md. Code, State Gov't § 20-601 et seq.)

Defendant's conduct also violates Maryland's state-level anti-discrimination law, which mirrors Title VII and provides additional remedies.

---

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

- Back pay in the amount of approximately **$15,253.32**, representing lost wages during the 4-month period of unemployment following wrongful termination (based on a salary of **$3,813/month** or **$45,760/year**);
- **Prejudgment interest** on the back pay amount, to compensate for the delay in receiving those funds;
- Compensatory damages for emotional distress, reputational harm, and loss of professional standing;
- Punitive damages for willful and malicious conduct;
- Attorneys' fees and costs;
- Any other relief the Court deems just and proper.

Plaintiff seeks damages **in excess of $75,000**, exclusive of interest and costs.

## VIII.    JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

---

**Respectfully submitted,**
**JANINE BECKWITH**
**Pro Se Plaintiff**
835 LAKE SHORE DR, BOWIE MD 20721
301-291-5245
JANINE.BECKWITH2025@GMAIL.COM

Aug 4, 2025